IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT FEBRUARY TERM, 1834.

---

### THE EXECUTORS OF CHRISTOPHER VANPELT vs. GARRET VEGHTE AND OTHERS.

A certiorari lies to the Orphans Court to bring up their proceedings, but this court are to be governed by the same legal principles in conducting the suit here, which regulate their proceedings upon the writ of certiorari in other cases. It is neither the duty nor within the powers or jurisdiction of this court, to weigh and compare the evidence, decide upon the facts, and to restate and finally settle the account.

If a testator in his will directs, that his widow "shall remain in the full possession and enjoyment of all his estate real and personal," and makes her one of his executors, she is entitled to the possession of the moneys and securities for moneys. She has them upon a trust which though only implied, is no less sacred, that she will use the estate discretely, and not wantonly dissipate or destroy it; but her co-executors are not answerable for her unjust or improvident conduct, unless they can be implicated in a fraudulent or collusive management with her, in the disposition which she has made of the funds. This fraud or collusion must be proved ; it will never be presumed, and what is evidence of fraud, is a question of law.

---

This was a certiorari directed to the Orphans Court of the county of Somerset, removing into this court the proceedings and the final decree of that court on the accounts of Albert P.

Vanpelt v. Veghte.

Voorhees and Jacob Williamson, executors of Christopher Vanpelt, deceased. Several reasons for reversal were filed by the accountants. These, together with the facts relied upon, as disclosed by the depositions of the witnesses, are mentioned in the opinion of the court, delivered by the Chief Justice. The case was submitted to the court upon the written argument of the counsel of the parties. *J. S. Green*, for executors and plaintiffs in certiorari. *S. L. Southard*, contra.

HORNBLOWER, C. J. The testator, after ordering his funeral expenses and just debts to be paid, says, in case his wife survives him, " it is my will that she remain in the full possession and enjoyment of all my estate, real and personal, and have it at her discretion to apply so much of the personal estate as may be necessary to the support and education of the children we have had together." The testator then directs, that after the death or marriage of his wife, his executors should sell all his estate, real and personal, and divide the proceeds among his children in a certain manner.

On the first of February, 1824, the children having all attained the age of twenty-one years, an agreement was entered into between them and their mother, who remained a widow, whereby in consideration of certain matters, she agrees to relinquish her right to and possession of all the estate of the testator, excepting certain articles specifically mentioned.

After this, the executors, whether voluntarily or upon citation does not appear, exhibited their joint account in the Orphans Court, which, upon exceptions filed thereto, was referred to auditors.

On the 19th of April, 1827, the auditors made their report and certified that after hearing the parties by their counsel and witnesses, they found a balance in the hands of the executors, of four thousand five hundred and twenty-nine dollars and eighty-six cents, to be distributed as the will directs. In June term, 1827, that report was in all things confirmed by a decree of the Orphans Court.

These proceedings are now brought into this court by the executors on certiorari; and they have assigned several reasons why this report of the auditors and the decree of the Or-

Vanpelt *v.* Veghte.

phans Court, ought to be reversed and set aside—and 1st. That the auditors have charged the executors with a larger amount of money than came to their hands.

2d. That the executors have been charged with the full amount of the first inventory, together with a large amount of interest thereon.

3d. Because the executors are charged with the sum of eight hundred dollars, and interest thereon ; which sum, the widow had disposed of, while the property was under her control as legatee for life.

The fourth and fifth reasons amount only to a general assignment of errors.

No state of the case is found among the papers, presenting any question of law for the consideration of this court ; and it is only from perusing the written arguments of counsel, handed up with the papers, that any definite idea can be formed of the questions intended to be submitted.

It is true we have the account as stated by the auditors, the depositions of witnesses in extenso, and the decree of the court. But this is not enough, unless upon a certiorari, this court are to weigh and compare the evidence, decide upon the facts and to re-state and finally settle the account; which, it is apprehended, is neither the duty, nor within the powers or jurisdiction of this court to do. A certiorari lies to the Orphans Court to bring up their proceedings ; but we are to be governed by the same legal principles in conducting the suit here, which regulate our proceedings upon the writ of certiorari in other cases. We can only correct the errors in law which the court below may have committed. We cannot review their decisions upon the facts controverted by the parties, except so far as to determine whether the evidence, upon which those decisions were founded, was legal and competent. *State* v. *Mayhew*, 4 *Halst.* 77.

The first reason assigned for reversal of this decree is, that the executors are charged with more money than came to their hands. This, if true, is an error in fact, and can only be corrected by rehearing the cause upon the evidence and re-stating the account. But the court below was the proper tribunal to

determine the facts, and the decree must be presumed right by legal intendment until the contrary is shown. 4 *Halst.* 77.

It is then incumbent on the plaintiffs, not only to point out to this court the specific items, or sums of money improperly charged in account against them, but to shew it was done upon illegal evidence, or contrary to law. This is not done; and after reading over carefully the testimony of the witnesses, I am unable to discover the error assigned in this reason.

In the second place, it is objected that by the decree, the executors are charged with the full amount of the first inventory, together with a large amount of interest thereon.

If it was unlawful for the Orphans Court thus to charge the executors, it must be for some reason that ought to be assigned to the court. It is certainly not error in itself to charge executors with the amount of the inventory, and with interest thereon. If they are not so chargeable, it must be for some special reason; or on the ground of some facts which ought to be shown to the court. That there may be cases in which it would be just and lawful to charge executors not only with the amount of the inventory, but with interest thereon, will not be questioned; and where the propriety of making such charges depends upon mere facts, the Orphans Court is the proper tribunal to hear and determine the matter. The only legal objection to the charges complained of under the second error assigned, is collected from the brief of the plaintiffs' counsel; and it is, that inasmuch as by the will of the testator, his widow was to remain " *in the full possession and enjoyment of his estate real and personal;* " therefore the executors ought not to be charged with what she had consumed of the property and interest while her lawful possession continued. This must be admitted; and if the court have charged the executors with articles fairly consumed by the widow, or with the appraised value of such as were injured or depreciated by her use of them; or with interest accrued, received and expended by her, during her enjoyment of the estate, it is clearly an error.

From the general appearance of the account as stated by the auditors, there is reason to apprehend that some mistake may have been committed, or some injustice done to the executors on

Vanpelt *v.* Veghte.

this point. But upon a careful examination of the record and documents before the court, it will be found very difficult, if not impossible, to point out the particular, either as to matter or amount, in which the executors have been thus improperly charged. The first item on the debit side is, " Oct. 1821. To amount of first inventory at death of testator, in hands of widow, as per will, and since come to hands of executors, $6719 : 93." Whether this sum is the same that the inventory amounted to in 1821, or whether it is only the amount, that came to the hands of the executors after the widow had relinquished her right, does not very clearly appear. If the former, however, we cannot say it is wrong. Though highly improbable, it is not impossible, but that the specific property may have remained, and its value have continued the same.

The next charge is for the " Increase of the personal property since the death of testator, $514 44." It is not easy to imagine how this increase should happen, considering that the widow had the use of the estate ; and yet in the absence of evidence to the contrary, this court cannot undertake to say, that no such increase existed. The executors are then charged with interest moneys accrued on sundry debts due the estate, and also on the notes received for sales at vendue. It is clear that all the interest accrued to the estate, and which had not been received and expended by the widow previous to her relinquishment of the property, did, by the very terms of her agreement, revert to the executors, and is therefore properly charged against them : nor is any reason perceived, why interest subsequently accruing on outstanding debts and the vendue accounts should not be brought into the account. If any of it has been lost by insolvency of debtors, or other means not imputable to their negligence, it might have been shown in evidence before the auditors ; but the testimony discloses no such excuse.

The first and second reasons, therefore, in my opinion, are not sustained.

The third reason assigned for reversal, presents the only specific objection to the decree, and raises a question of law for our decision. The testator, at the time of his death, had two notes against Aaron Longstreth for four hundred dollars each. These notes were included in the inventory, and are with the

interest accrued thereon, charged against the executors. They came into the possession of the widow, and were by her transferred or disposed of before the agreement entered into between her and her children. One of them she gave up to her son by a former husband, and the other to her daughter, the wife of one of the executors.

It is not pretended that these notes ever came back to the possession of the executors—and if they are properly charged against them in this *joint* account, it must be either because they wrongfully suffered them to go into the possession of the widow; or on the ground of fraud, imputable to *both* of them.

Who then was entitled to have the custody of these notes? clearly the widow; and that by the very terms of the will. The language of the testator is plain and unequivocal, "It is my will that she *remain* in the *full* possession and enjoyment of *all* my estate real and *personal*." Nor is it unimportant to notice that the testator made her an executrix of his will, and as such, at least, until she renounced, she was entitled to retain the possession of the personalty. In short, her right to the possession of the moneys and securities for money, was as unquestionable and absolute, as her right to the possession of the furniture in the house and the stock upon the farm.

It is true she had it upon a trust, which though only implied, was not the less sacred, that she would use the estate discreetly, and not wantonly dissipate or destroy it; but then the executors are not to be answerable for her unjust or improvident conduct. To say, that if she fairly exhausted the funds, the executors are discharged, but if she gave them away, or destroyed the bonds or notes, they are to be held responsible, is to make them securities for her good behavior, without their consent.

If, however, the executors can *both* be implicated in any fraudulent or collusive management with the widow, in the disposition she has made of the funds, they are *justly* and *jointly* chargeable in account with the children. But the charge of fraud and collusion is not sustained. It is never to be presumed; and it is not proved. First, it is insisted that as the executors took possession of the notes, their subsequent delivery of them to her is evidence of fraud. But if she was entitled to the possession of the notes, no fraud can be inferred from the

mere delivery of them to her. If the executors knew it was her intention to cancel or to give them away, and they delivered them to her to enable her to do so, it would present a different case. But there is no evidence to that effect. The exceptants thought proper to examine Voorhees, one of the executors, as a witness, before the auditors, and he states that the notes in question were delivered by him, together with the other securities drawing interest, to the widow, at her request, and that he took her receipt for them. The other executor was not present, and when informed of the disposition she had made of the notes, he expressed his dissatisfaction. It is difficult, under these circumstances, to see the justice of charging him at once and definitively in a *joint* account with Voorhees, to the full amount of both those notes with interest. The notes, if in existence, are out of his hands, and for all that appears, beyond his reach, without any neglect or default on his part.

I have said that fraud was not proved ; if there was any evidence from which culpable negligence or fraud on the part of both the executors, could be legally inferred, I should not feel authorized to reverse the decision of the auditors on that point. They were the proper judges of the facts controverted before them. But what is evidence of fraud, is a question of law. There is, in my opinion, a total absence of every thing amounting to such evidence as against Williamson, the co-executor. It would be a strong measure to charge him with the amount of the note or money transferred without his default by the widow, to the wife of his co-executor ; admitting that Voorhees is liable to the heirs, Williamson cannot sue *him*, nor has he any means to recover the note or money out of his hands. But though the executors under existing circumstances, ought not to be *jointly* charged with the amount of these two notes, it by no means follows, that Mrs. Voorhees has a right to one, and Longstreth to the other. On the contrary, the transaction as between them and the widow, *may be* a fraud on the estate. If she had passed away these notes for a valuable consideration, to persons without notice, or had received the money due on them, and paid it away to bona fide receivers of it, it would be different. *Moffat* v. *Strong,* 10 *Johns. Rep.* 12 : *Hastings* v. *Douglass, Cro. Car.* 343. But here is no such pre-

tence, and therefore I will not say that the notes or the money due on them do not belong to the children of the testator; and if it does, they undoubtedly have their remedy; but not against the executors in the manner which has been attempted in this case.

For the reasons given, let the decree and report of the auditors be set aside, and the record, &c. be remitted to the Orphans Court to be proceeded on according to law.

Decree reversed.

CITED in *Kirby* v. *Coles Exr.*, 3 *Gr.* 442; *State* v. *Mayor, &c. City of Hudson,* 3 *Vr.* 367.